IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EUGENE DUANE BURGHER, and | ) | Case No. 12-14410-SBB |
| THERESA LYNN BURGHER | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

ORDER GRANTING MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. §707(b)(1) BASED ON PRESUMPTION OF ABUSE ARISING UNDER 11 U.S.C. §707(b)(2), OR, IN THE ALTERNATIVE, BASED ON A FINDING OF ABUSE UNDER 11 U.S.C. §707(b)(3)

THIS MATTER is before the Court following Eugene Duane and Theresa Lynn Burgher's ("Debtors") voluntary conversion of their case from Chapter 13 to Chapter 7. The United States Trustee ("UST") has filed a Motion to Dismiss the Debtors' case under Chapter 7 pursuant to 11 U.S.C. § 707(b)(1)[1] for presumption of abuse under § 707(b)(2) or based on a finding of abuse under § 707(b)(3). The Debtors argue that § 707(b) does not apply to cases converted from Chapter 13 to Chapter 7. The Debtors concede that if this Court were to determine that § 707(b) applies in cases that are converted to Chapter 7, then their case should be dismissed. The UST's Motion to Dismiss dated October 29, 2014 can be found at the Court's Docket number 83. The Debtors' Response dated November 18, 2014 can be found at the Court's Docket number 89. The sole issue before this Court is the discrete inquiry of whether § 707(b) applies to cases that are converted to Chapter 7 from other chapters under the Bankruptcy Code.

A. FACTUAL BACKGROUND

Debtors' Chapter 13 case and related Statement and Schedules

The Debtors filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code on March 12, 2012. On March 26, 2012, the Debtors filed with the Court a Statement of Financial Affairs ("SOFA") and Schedules[2] and a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C").[3] On August 21, 2012, this Court confirmed a Chapter 13 Plan of reorganization in the Debtors' Chapter 13 case.[4]

---

[1] Unless otherwise noted, all statutory references shall be to Title 11 of the United States Code.
[2] Docket # 8.
[3] Docket # 14.
[4] Docket # 48.

1

Line 1 of the SOFA reflects that in the years 2009 and 2010, the Debtors had combined annual gross incomes of $144,442 and $149,781, respectively.[5] Line 15 of Form 22C reflected that the Debtors' annualized current monthly income, calculated using six months of the Debtors' pay advices immediately preceding the bankruptcy filing, was $145,236.[6] Line 16 of Form 22C further reflected that at the time of the filing of their Chapter 13 case, the Debtors' were above the median family income of $87,405 for the State of Colorado.[7]

Moreover, Debtors' Schedule I reflected that in 2012, the Debtors' household included three dependent children, aged 14, 18, and 7 and the Debtors' gross monthly income was $12,103.[8] Debtors' Schedule J reflected monthly expenses of $9,503 and a monthly net disposable income of $4,922.[9] Additionally7, Line 59 Form 22 C reflected that based on the national and local standards applicable to the Debtors' case, the Debtors' had a net monthly disposable income of $3,651.39.[10]

Pursuant to their Form 22C disposable income, the Debtors' showed an ability to pay their non-priority unsecured creditors a total sum of $216,752.40 over a course of five years (monthly disposable income of $3,651.39 <u>multiplied</u> by 60 months <u>minus</u> unpaid attorney's fees and costs in the amount of $2,231). The confirmed Chapter 13 Plan proposed to pay allowed claims for non-priority unsecured creditors ("Class Four") a total sum of $10,680.71 over a period of five years.[11] The confirmed Plan further provided that the "Debtors will increase the payments as necessary in order to pay the Class Four creditors 100%[.]"[12]

Ultimately, the amount of Class Four claims filed with the Court in the Debtors' Chapter 13 case totaled $29,019.19.[13] The Debtors never modified their plan to provide 100% of the $29,019.19 amount in Class Four Claims.

<u>Debtors' Voluntary Conversion to Chapter 7</u>

Rather, two years and four months into their plan payments, on August 11, 2014, the Debtors filed a Notice of Conversion of Case from Chapter 13 to Chapter 7 pursuant to § 1307(a).[14] The same day, the Court entered a docket text order converting the Debtors' case to Chapter 7.[15] The Debtors did not file updated Schedules I and J or a Chapter 7 Applicable

---

[5] *Supra* note 2 at 1.
[6] *Supra* note 3 at 2.
[7] *Id.*
[8] *Supra* note 2 at 19.
[9] *Id.* at 20.
[10] *Supra* note 3 at 7.
[11] Fifth Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims dated August 8, 2012 at 3 (Docket # 45).
[12] *Id.* at 9, ¶ 2(a).
[13] *See* Claims Register (sum total of proofs of claim nos. 1 (general unsecured claim in the amount of $176.12); 2 ($869.40); 4 ($1,041); 5 ($400.49); 6 (445.64); 7 ($187.85); 8 ($475.02); 9 ($442.18); 11 ($667.07); 13 (2,255.78); 14 ($742.92); 15 ($300.26); 16 ($712.31); 17 ($633.80); 18 ($801.34); 19 ($453.01); 20 ($685.55); 21 ($16,938.31); and 22 ($791.14)).
[14] Docket # 73.
[15] Docket # 75.

Statement of Current Monthly Income and Means Test Calculation Forms ("Form 22A") in their Chapter 7 case.

Pursuant to the Final Report filed by the Chapter 13 Trustee in the Debtors' Chapter 13 case, at the time of the conversion of the Debtors' case, Class Four creditors had received $0 in distribution from payments made under the Debtors' confirmed Chapter 13 plan.[16] Pursuant to the Debtors' confirmed plan, Class Four was to begin receiving distributions after payments to Class One, Two and Three were complete.[17] Indeed, payments made under the Debtors' Chapter 13 Plan, which payments were properly distributed by the Chapter 13 Trustee under the confirmed Plan, were distributed to Debtors' Counsel (Class One Claim), non-dischargeable tax debts (Class One Claim); secured lenders on Debtors' residence (Class Two Claim); vehicles (Class Three Claim); and the Chapter 13 Trustee's administrative fees.[18]

UST's Motion to Dismiss Debtors' Chapter 7 case

Two months following the conversion of the Debtors' case to Chapter 7, on October 29, 2014, the UST filed a Motion to Dismiss Debtors' Case under §§ 707(b)(1) and (b)(2) or, in the alternative, under §§ 707(b)(1) and (b)(3).[19] On November 18, 2014, the Debtors timely filed an Objection to the UST's Motion to Dismiss.[20] The only defense advanced by the Debtors is legal argument that § 707(b) applies to cases *filed* as a Chapter 7 case, and not to cases converted to Chapter 7 from Chapter 13.[21]

Importantly, at a non-evidentiary hearing held on May 5, 2015, the Debtors, through counsel, stipulated that if the Court were to determine that § 707(b) applies to cases converted to Chapter 7, then the Debtors' case should be dismissed under § 707(b). At the same hearing, the Debtors and the UST also agreed that the issue at hand was purely legal in nature and could be considered and resolved by the Court by way of legal briefs. Subsequently, the parties timely submitted their briefs to this Court.

This Court, having considered the parties' legal briefs, and reviewed and considered applicable case law on the issue, hereby makes the following findings of facts and conclusions of law in favor of the UST and against the Debtors.

## B. DISCUSSION

Unlike Chapter 13, where a debtor is allowed "to obtain a discharge of his debts if she pays her creditors a portion of her monthly income in accordance with a court-approved

---

[16] *See* Docket # 88.
[17] *Supra* note 11 at 9, ¶ 2(a).
[18] *See id.*
[19] Docket # 83.
[20] Docket # 89.
[21] *See generally, id.*

3

plan[,]"[22] individual debtors under Chapter 7, as a quid pro quo exchange for a discharge, "liquidate their nonexempt assets, rather than dedicate their future income, to repay creditors."[23]

Here, the Debtors' initially filed their case under Chapter 13 of the Bankruptcy Code and then converted the case to Chapter 7.

The UST seeks dismissal of the Debtors' Chapter 7 case, contending that the Debtors' financial situation reflects that the Debtors are able to pay their creditors in a manner that makes granting of relief to Debtors under Chapter 7 presumptively abusive under § 707(b)(2) and requires dismissal under § 707(b)(1). Alternatively, the UST contends that even if the presumption of abuse does not arise under § 707(b)(2), the totality of circumstances of the Debtors' case supports an actual finding of abuse under § 707(b)(3) and requires dismissal under § 707(b)(1). Because the Debtors have not filed current schedules I and J or Form22A in their Chapter 7 case, the UST relies on Schedules I and J and Form 22C filed in the Debtors' Chapter 13 case.

### I. BACKGROUND AND MODUS OPERANDI OF § 707(b)

Section 707(b) was added to Bankruptcy Code in 1984 as part of the Bankruptcy Amendments and Federal Judgeship Act[24] and was amended extensively in 2005 under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").[25] The BAPCPA amendments were intended to restrict eligibility for relief under Chapter 7 of the Bankruptcy Code by making "it harder for individuals who can repay their debt to file for bankruptcy under Chapter 7 . . . ."[26]

Post BAPCPA, § 707(b) now provides that a Chapter 7 case may be dismissed, or converted to a Chapter 11 or 13 with consent of a debtor, to prevent abuse of the Chapter 7 provisions. Specifically, § 707(b)(1) provides, in part, as follows:

> . . . the court, on its own motion or on a motion by the United States trustee, [bankruptcy case] trustee . . . may dismiss a case *filed by an individual debtor under this chapter [Chapter 7]* whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of [the Bankruptcy Code] . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter [Chapter 7].[27]

In turn, together §§ 707(b)(2) and (b)(3) provide two alternatives pursuant to which a court can find relief under Chapter 7 — abusive.

---

[22] *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 64 (2011) (citing 11 U.S.C. § 1301, *et seq.*).
[23] *Id.* at 65 n.1 (citing 11 U.S.C. §§ 704(a)(1) and 726).
[24] *See* 6-707 Collier on Bankruptcy, P 707.LH (16th ed. rev. 2015).
[25] *Id.*
[26] *See* Robert M. Lawless, *Did Bankruptcy Reform Fail? An Empirical Study of Consumer Debtors*, 82 Am. Bankr. L.J. 349 (2008) (citing 151 Cong. Rec. S1856 (daily ed. Mar. 1, 2005)).
[27] 11 U.S.C. § 707(b)(1) (2015) (emphasis added).

Pursuant to § 707(b)(2), a bankruptcy court *"shall presume abuse exists* if the debtor's current monthly income reduced by the amounts determined under [subsection (b)(2)(A)]" is greater than the threshold amounts in subsections (b)(2)(A)(i)(I) or (b)(2)(A)(i)(II).[28] The statutory formula set forth in § 707(b)(2) is referred to as the "Means Test." In practice, a debtor determines Means Test eligibility by filing out a Form 22A.

If a debtor's disposable income, as determined by the Means Test, exceeds the threshold prescribed in §§ 707(b)(2)(A)(i)(I) or (b)(2)(A)(i)(II), then the debtor's case is presumptively abusive and subject to dismissal under § 707(b)(1).[29] However, under § 707(b)(2)(B), a debtor may rebut a presumption of abuse under the Means Test "by demonstrating special circumstances . . . that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."[30] In this manner, the Means Test is "used as a screening mechanism to determine whether a Chapter 7 proceeding is appropriate."[31]

However, even when the presumption of abuse does not arise under § 707(b)(2)(A), or in cases when the presumption is rebutted by a debtor under § 707(b)(2)(B), a court's inquiry for dismissal under § 707(b)(1) must continue under § 707(b)(3). Under, § 707(b)(3), a bankruptcy court has the discretion to make a finding of abuse based on the specific facts of a case.[32] Specifically, § 707(b)(3) provides, in part, that when a presumption of abuse does not arise under the Means Test or is rebutted by a debtor, a bankruptcy court "*shall* consider— (A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."[33]

Thus, "§707(b) 'provides a two-step process to detect and deter abusive filers: the . . . objective means test prescribed in §707(b)(2), and the more subjective test of §707(b)(3) which requires an analysis of the facts of a particular case.' "[34]

The case before this Court is unique in the fact that here the Debtors concede that if § 707(b) applies to cases converted to Chapter 7, their case would be subject to dismissal pursuant to § 707(b)(1), under either § 707(b)(2) or § 707(b)(3). In other words, the Debtors agree that if their case was filed as a Chapter 7, their case would objectively be deemed presumptively abusive under §707(b)(2); or, subjectively determined abusive under § 707(b)(3). The Debtors argue, however, that under the plain language of § 707(b)(1), only cases *filed* as Chapter 7, and not *converted to* Chapter 7, are subject to the scrutiny of a § 707(b) dismissal. Consequently, the discrete issue before this Court is the mere applicability of § 707(b) to cases converted to

---

[28] *See* 11 U.S.C. § 707(b)(2) (2015) (emphasis added).
[29] *Id.*
[30] 11 U.S.C. § 707(b)(2)(B) (2015).
[31] *Ransom v. FIA Card Services, N.A.*, 562 U.S. at 65 n.1.
[32] *See* 11 U.S.C. § 707(b)(3) (2015).
[33] *Id.* (emphasis added).
[34] *In re Rivers*, 466 B.R. 558, 568 (Bankr. M.D. Fla. 2012) (quoting *In re Henebury*, 361 B.R. 595, 603-04 (Bankr. S.D. Fla. 2007) (internal citation omitted)).

Chapter 7. If the Court answers the question in the affirmative then the Debtors' case shall be dismissed under § 707(b)(1) without further inquiry of the Court.[35]

## II. THE THREE APPROACHES REGARDING APPLICATION OF § 707(b) TO CONVERTED CASES

The issue regarding applicability of § 707(b) to cases converted to Chapter 7 is one of first impression before this Court and in the District of Colorado. Nationwide, three distinct approaches have developed in response to the inquiry: (a) a overwhelming majority of courts have decided that applying § 707(b) to cases converted to Chapter 7 is in accord with the overarching goals under BAPCPA of avoiding abuse of the Bankruptcy Code, and specifically, granting of relief under Chapter 7[36]; (b) a minority of courts utilize a "literalist view" and have found that the plain language of the statute provides that only cases initially *filed* as a Chapter 7 petition are subject to the scrutiny of § 707(b) [37]; and (c) two separate hybrid approaches have been employed by another small section of courts that otherwise agree with the conclusion of the majority view, but find support for their conclusions in the plain language of § 707(b)(1) and either the grammatical rule of "last antecedent" to hold that only the phrase "by an individual debtor" and not "under this chapter" is modified by the term "filed" within the context of §707(b)(1),[38] or the dictionary definition of the term "filed" to hold that the term incorporates cases converted to Chapter 7.[39]

### a. The Majority Approach

Under the majority approach, courts have taken the view that when a case is converted to Chapter 7, the case is deemed filed under chapter 7 as of the initial petition date, and therefore, subject to a full § 707(b) analysis for purposes of eligibility. These courts find support for their position in § 348(a), which provides that conversion of a case does not change the date of filing of the petition, the commencement of the case, or the order for relief. The majority position holds that § 707(b)(1) must be read in the larger context of the statutory scheme of BAPCPA and

---

[35] As best as this Court is able to discern, the Debtors do not consent to conversion of the case to Chapter 13 under § 707(b)(1).

[36] *See e.g., In re Perfetto*, 361 B.R. 27 (Bankr. D.R.I. 2007); *Fokkena v. Chapman (In re Chapman)*, 447 B.R. 250 (B.A.P. 8th Cir. 2011); *In re Lassiter*, 2011 Bankr. LEXIS 1927 (Bankr. E.D. Va. May 24, 2011); *In re Willis*, 408 B.R. 803 (Bankr. W.D. Mo. 2009); *In re Kellett*, 379 B.R. 332 (Bankr. D. Or. 2007); and *In re Reece*, 498 B.R. 72 (Bankr. W.D. Va. 2013); *see also Advanced Control Solutions, Inc. v. Justice*, 639 F.3d 838 (8th Cir. Ark. 2011) and *In re Davis*, 489 B.R. 478, 480 (Bankr. S.D. Ga. 2013).

[37] *See e.g., In re Layton*, 480 B.R. 392, 397 (Bankr. M.D. Fla. 2012); *In re Fox*, 370 B.R. 639 (Bankr. D.N.J. 2007); *McDow v. Dudley (In re Dudley)*, 405 B.R. 790 (Bankr. W.D. Va. 2009); *In re Pate*, 2012 Bankr. LEXIS 5926 (Bankr. S.D. Tex. Dec. 28, 2012); *In re Thoemke*, 2014 Bankr. LEXIS 451 (Bankr. M.D. Fla. 2014); and *In re Miller*, 381 B.R. 736 (Bankr. W.D. Ark. 2008).

[38] *See e.g., Justice v. Advanced Control Solutions, Inc.*, 2008 U.S. Dist. LEXIS 81046 (W.D. Ark. Sept. 22, 2008); and *In re Davis*, 489 B.R. 478, 484-485 (Bankr. S.D. Ga. 2013).

[39] *See e.g., In re Kerr*, 2007 Bankr. LEXIS 2474 (Bankr. W.D. Wash. July 18, 2007); *see also* Anna Haugen, James C. Eidson and Amir Shachmurove, *Should § 707(b) Apply in Chapter 7 Converted from Chapter 13?*, Am. Bankr. Inst. .J., 33-4 ABIJ 48, (2008) (for brief discussion of the "Hybrid View").

in a manner that gives full effect to BAPCPA's goal of preventing Chapter 7 discharges in cases where debtors have disposable income to pay their creditors.[40]

Courts adopting the majority view also rely on a myriad of supplementary rationales to support their conclusions. As example, one court noted that under § 707(b)(2)(D), Congress expressly excluded cases filed by disabled veterans from the scrutiny of § 707(b), and could have easily done the same with converted cases by adding similar language to the Bankruptcy Code, but has chosen otherwise.[41] The court in *Lassiter*, for example, concluded that "the absence of a clearly stated exception to converted cases supports the conclusion that [§707(b) applies to converted cases]."[42] Additionally, at least two other courts have found support within Rule 1019(2) of the Federal Rules of Bankruptcy Procedure, which provides for an extension of time to interested parties to file a motion to dismiss under § 707(b) in cases that are converted from other chapters, including cases converted from chapter 13 to chapter 7.[43] The courts in *Davis* and *Perfetto* have explained that Rule 1019(2) would have no purpose if § 707(b) did not apply to cases converted to Chapter 7.[44] Another court has propounded that "[i]nterpreting § 707(b) as not applying in converted cases itself opens the door to abuses. A debtor seeking to avoid the chapter 7 'means test' and § 707(b) 'abuse' scrutiny could file a petition in chapter 13 and then turn around and convert the case to chapter 7."[45]

### b. The Minority Approach

A minority of courts take a different view and resort to a plain-language reading approach, or a "literalist view," to hold that the inquiry at issue begins and ends with the language of § 707(b)(1) and what it does and does not say. The literalist view courts conclude that § 707(b) does not apply to cases that are converted to Chapter 7. These courts cite to the text of § 707(b)(1) to hold that the statute only references cases that are *filed* as Chapter 7 and makes no reference to cases that convert to Chapter 7. The minority approach takes the view that had Congress intended for the statute to apply to converted cases, it would have included the term "converted" in the text of the statute.

Courts adopting the minority approach further posit that because the Means Test employs a computation based on monthly income of a debtor during the six-month period preceding the filing of the initial petition, conducting a Means Test upon conversion may require a court to review outdated financials of a debtor that would not provide a reasonable reflection of the debtor's financial position as of the time of the conversion.[46] Following the minority approach, the court in *Layton* noted that under such circumstances, the "more probable result is that good-faith chapter 13 debtors will be unable to proceed under either chapter [7 or chapter 13][47]...

---

[40] *See e.g., In re Reece*, 498 B.R. at 72 and *In re Kellett*, 379 B.R. at 332.
[41] *In re Lassiter*, 2011 Bankr. LEXIS at 1927.
[42] *Id.*
[43] *In re Davis*, 489 B.R. at 484; *In re Perfetto*, 361 B.R. at 31;
[44] *See generally id.*
[45] *See In re Kellett*, 379 B.R. at 338.
[46] *See e.g., In re Layton*, 480 B.R. at 398-399 and *In re Kellett*, 379 B.R. at 332.
[47] *In re Layton*, 480 B.R. at 399.

[which] may result in a debtor being cycled through 'a perpetual 'do loop' of failures in chapter 13, followed by brief tenures in chapter 7, followed by further re-conversions to chapter 13.' "[48]

### c. The Hybrid Approach

Yet another small number of courts have resorted to a third, hybrid approach, that like the minority "literalist view" also relies on a plain reading of § 707(b)(1), but concludes that the statute applies to cases converted to Chapter 7.

Some courts adopting a hybrid approach resort to the grammatical rule of "last antecedent," which rule states that "[a] limiting clause or phrase ordinarily is to be read as modifying only the noun or phrase it immediately follows[,]"[49] to conclude that the phrase "case filed" in the text of § 707(b)(1) is modified by the phrase "by the individual debtor" rather than the later phrase "under this chapter."[50] These courts conclude that the term filed is used in references only to the type of debtor, i.e., an individual, and not to the chapter under which the debtor files her case.

Other courts adopting a hybrid approach have simply reasoned that the definition of the term "filed" means " 'to put or keep in useful order or 'to enter (e.g., a legal document) on public official record[,] '" and therefore, includes cases that are put or enter a court's docket as a chapter 7 upon conversion.[51]

Notably, courts adopting the hybrid approaches agree with the general conclusion of the majority approach that § 707(b) applies to converted cases. These cases differ only in their analysis and reliance upon the plain-language of § 707(b)(1), finding no ambiguity in the text of the statute under either the "last antecedent rule" or the dictionary meaning of the word "filed."

### III.   ADOPTING THE MAJORITY APPROACH

Having considered the various cases undertaking the three approaches, and the nuances within the three approaches, this Court finds the cumulative analyses and rationales of the majority approach to be most persuasive. More specifically, the Court finds that in light of the (a) larger context of the bankruptcy scheme, and particularly, the effects of conversion on a case pursuant to § 348(a); (b) procedures prescribed in Rule 1019(2) of the Federal Rules Bankruptcy Procedure regarding filing of § 707(b)(1) motions in converted cases, including cases converted to Chapter 7;  and (c) overarching goals of BAPCPA of avoiding abuse of the Bankruptcy Code, and specifically, relief under Chapter 7— the most logical and compelling conclusion is that Congress intended § 707(b)(1) to apply to cases converted to Chapter 7 with equal force.

---

[48] *Id.* (quoting *In re Kellett,* 379 B.R. at 339).
[49] *Barnhart v. Thomas,* 540 U.S. 20, 26 (U.S. 2003)
[50] *Justice v. Advanced Control Solutions, Inc.*, 2008 U.S. Dist. LEXIS 81046 (W.D. Ark. Sept. 22, 2008); see also *In re Davis*, 489 B.R. at 484-485.
[51] *In re Kerr*, 2007 Bankr. LEXIS 2474, 8-9.

Equally important, this Court agrees with the *Kellett* court that interpreting § 707(b) narrowly, to not apply in cases converted to Chapter 7, would open up the door to potential abuses of the bankruptcy process by allowing debtors to file Chapter 13 cases and then convert to a Chapter 7 solely for purpose of avoiding the Means Test.

Indeed, seemingly, the present case appears to be a perfect example of such an abuse of the process. Here, the Debtors initially filed their case under Chapter 13 of the Bankruptcy Code. At the time of the initial filing of their petition, and pursuant to § 707(b), the Debtors were not eligible for Chapter 7 relief. The Debtors' financials as of the initial filing reflected an ability to pay a substantial sum to their unsecured creditors. Indeed, this Court confirmed a Chapter 13 plan that over a course of five years, purported to pay 100% of the Debtors' Class Four claims. However, the Debtors never modified their plan to pay a 100% of Class Four Claims. Rather, less than half-way through their plan, and before a single dollar was paid to Class Four, the Debtors converted their case to Chapter 7.

It is not unimportant to this Court that the Debtors' Notice of Conversion to Chapter 7 filed in this case provides no information, whatsoever, regarding a change in circumstances in the Debtors' financial situation since the petition date of March 12, 2012. Additionally, the Debtors have not filed amended schedules I and J or a Form 22A in their converted case.

Indeed, there is no evidence before this Court that explains, let alone justifies, the reason why the Debtors have converted their case at a suspicious juncture of their Chapter 13 case, i.e., at or around a time where distribution to Class Four might have commenced under the confirmed Chapter 13 Plan. Tellingly, the only parties to have received distributions under the Debtors' confirmed Chapter 13 plan were creditors that, arguably, are not otherwise subject to a discharge under Chapter 7. Under these circumstances, it is not unreasonable to speculate that perhaps these Debtors are motivated by a desire to obtain a discharge of their debts without paying anything to their unsecured creditors, despite their apparent ability to pay 100% of such claims filed in their case.

Moreover, the Court notes that these Debtors seemed to have in fact benefited from their Chapter 13 case. For over two years, the Debtors paid their non-dischargeable tax debts and pre-petition mortgage defaults without any post-petition interest or penalty. Yet, the Debtors' creditors have received no advantage from their initial Chapter 13 filing. Allowing the Debtors to now convert to a Chapter 7 case without subjecting them to the scrutiny of § 707(b), would lead to a result that is absurd, directly contrary to the legislative intent of BAPCPA, and the overall scheme of the Bankruptcy Code.

Further, regarding concerns that applying § 707(b) to converted cases would have courts relying upon outdated financials of a debtor, this Court notes that any presumption of abuse under § 707(b)(2) can be rebutted pursuant to §707(b)(2)(B) with a showing of "special circumstances." Potentially, a change of circumstances in a debtor's financial condition can be demonstrated by following the guidelines prescribed in § 707(b)(2)(B) and by filing current schedules I and J. The Debtors here have done neither.

This Court also finds substantial support for its conclusion in the United States Supreme Court's *Marrama* decision that promulgated the standard that notwithstanding a debtor's right to conversion, debtor must demonstrate eligibility for relief under the chapter to which the debtor

wishes to convert.[52]  In this case, Debtors have failed to demonstrate their eligibility for Chapter 7 relief by failing to file with the Court a Form22A in their Chapter 7 case.  This Court finds that under the facts of this case, the Debtors are not pursuing the conversion in good faith and have not demonstrated eligibility for Chapter 7 relief under § 707(b).

### C. CONCLUSION AND ORDER

The focus of the post-BACPA § 707(b) statutory scheme is to ensure that Debtors who *can* pay their creditors *do* pay their creditors.[53]  Allowing debtors who do not qualify for a chapter 7 case to file a chapter 13 case, only to convert the case to a chapter 7 and avoid the scrutiny of § 707(b), would prejudice creditors and provide an unfair shortcut to debtors to obtain a chapter 7 discharge – at their creditors' expense. It is the duty of this Court not just to ensure the Debtors' fresh start, but also to protect their creditors' rights.

Therefore, for the reasons stated,

IT IS HEREBY ORDERED that a debtor who converts a case to Chapter 7 from another chapter of the Bankruptcy Code is subject to a review for dismissal under § 707(b).  Here, the Debtors have conceded that the resolution of the inquiry that § 707(b) applies to bankruptcy cases that are initially filed under Chapter 13 of the Bankruptcy Code and later converted to Chapter 7 —in the affirmative— should result in the dismissal of their Chapter 7 case.

Accordingly,

IT IS FURTHER ORDERED that the Motion of the United States Trustee to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. Section 707(b)(2) and Abuse Arising Under 11 U.S.C. Section 707(b)(3) is **GRANTED**, and this Chapter 7 case is **DISMISSED**.  The Clerk of the Court may close this case in the normal course.

Dated this 30th day of September, 2015.                BY THE COURT:

_Sid Brooks_

Sidney B. Brooks,
United States Bankruptcy Judge

---

[52] *Marrama v. Citizens Bank*, 549 U.S. 365 (U.S. 2007) (In *Marrama*, the Supreme Court held that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.")

[53] *Ransom v. FIA Card Servs., N.A.*, 562 U.S. at 64-65 (emphasis added).